452 So.2d 973 (1984)
SUN CRETE OF FLORIDA, INC., Sun Crete of Carolina, Inc., John Meincke, Kenneth Alston and Does 1 through 20, Appellants,
v.
SUNDECK PRODUCTS, INC., Sun Surfaces, Inc., a Florida Corporation, Pool Builders, Inc., and Ted Libernini, Appellees.
No. 83-939.
District Court of Appeal of Florida, Fourth District.
June 13, 1984.
Rehearing Denied July 25, 1984.
*974 Jane Kreusler-Walsh and Larry Klein, West Palm Beach, for appellants.
Richard Birnbaum, Fort Lauderdale, and Edna L. Caruso, West Palm Beach, for appellees Sundeck Products, Inc., and Sun Surfaces, Inc.
DELL, Judge.
Appellees sued for damages and for preliminary and permanent injunctions restraining appellants from using trade secrets which appellees had revealed pursuant to a nondisclosure agreement. Appellants take this non-final appeal from the trial court's order granting a preliminary injunction. Fla.R.App.P. 9.130(a)(3)(B).
Leslie Stambaugh, principle stockholder and chief executive of appellee Sundeck Products, Inc., developed Sundek, a coating used to surface or resurface pool decks, patios, driveways and other areas subject to foot and vehicular traffic. Appellee presented evidence that Sundek has great strength, the life expectancy of concrete, a non-skid surface, easy maintenance, and that its most unique feature is its capacity to bond to existing cement, while other decking products require new cement for proper bonding. The Sundek process consists of specially formulated raw materials, applied with special tools and techniques in a three-step process.
Appellant Meincke approached Stambaugh in California about becoming a Sundek dealer in South Carolina. After Meincke signed a nondisclosure agreement, Stambaugh demonstrated the Sundek process, sold Meincke the raw materials, and arranged for training of Meincke's South Carolina employees. Stambaugh and Meincke failed to reach agreement on a dealership contract.
Stambaugh subsequently learned that Meincke was doing business as appellant Sun Crete, opening Sun Crete dealerships on the east coast, including one in Florida, and selling a product which utilized the Sundek process. However, Meincke had substituted a cheaper, less durable sealer than that developed by Stambaugh, in the third step of the process.
In order to secure injunctive relief, an aggrieved plaintiff must show irreparable harm, a clear legal right, an inadequate remedy at law, and considerations of the public interest. Contemporary Interiors v. Four Marks, Inc., 384 So.2d 734 (Fla. 4th DCA 1980). Appellants contend that the trial court had before it no evidence tending to prove that the Sundek product and process are trade secrets, and thus appellees failed to prove the first two elements of their claim for injunctive relief.
Appellants assert several challenges to appellees' proof. First, they contend that appellees revealed one of their formulas to an independent cement supplier without a nondisclosure agreement. Stambaugh testified that he did not reveal any formula. He brought his chemical additive to the cement supplier and instructed him to mix *975 the additive with specified amounts of sand and cement to produce the raw material for one step of the Sundek process.
Second, appellants claim appellees published its process in their own promotional materials. Stambaugh testified that these promotional materials contain only a general description of the techniques involved, insufficient for a reader to duplicate the techniques. Further, John McCoy, a Texas Sundek dealer, testified that a person experienced in the decking business could not duplicate the technique merely by watching the application process. Meincke had the promotional materials in his possession, had watched Sundek being applied, and appellee's employee had trained his crew in the technique for eight days, yet those crews required two retraining sessions before they could produce an acceptable deck. The promotional materials thus were not so detailed or extensive as to remove the Sundek process from the trade secret category.
Third, appellants point out that the tools used in the application process are standard catalogue items. However, they are not standard concrete tools. Stambaugh adapted and modified tools from other trades for the purpose of applying Sundek.
These challenges involve conflicts in the evidence. We will not disturb the trial court's resolution of those conflicts.
Additionally, appellants argue that the Sundek process cannot be a trade secret because the raw materials are commercially obtainable in the open market. Finally, appellants contend that since appellees did not give one of their formulas to Meincke, appellees did not demonstrate that appellants have used their secrets. The record reflects that Stambaugh sold Meincke the raw materials, and that Stambaugh examined a sample of the Sun Crete product and found it identical to Sundek (except for the cheaper, nondurable sealer). However, appellees concede that there is no evidence to show how Meincke acquired this formula.
Neither of these arguments requires reversal. In addition to the disputed evidence discussed above, the record demonstrates that appellees presented evidence that their three-step process is unique in the industry, unpublished, and not susceptible of general knowledge. The law of trade secrets protects more than chemical formulas. A trade secret is a plan or process, tool, mechanism or compound. It includes a unique combination of otherwise known components, if the combination differs materially from other methods known in the trade. 2 Callman, Unfair Competition, Trademarks & Monopolies § 14.07 (4th Ed. 1982).
In Lee v. Cercoa, 433 So.2d 1 (Fla. 4th DCA 1983), petition for review denied, 444 So.2d 417 (Fla. 1984), the trial court granted injunctive relief upon a finding that certain chemical formulations and certain techniques in the manufacturing process constituted trade secrets.
Appellant argues that appellee failed to sustain its burden to establish that the foregoing were trade secrets, since, so he argues, all the information was published in literature or patented and the techniques and processes were known to others in this field. While the evidence to which appellant points would support an inference that many of the major elements of the appellee's process are the same as those known to others in this field, it is also sufficient to support the court's factual findings that the combination of elements into a complicated production process amounted to a trade secret and not merely a variation of a general process, see Ferroline Corp. v. General Aniline & Film Corp., [207 F.2d 912, 917 (7th Cir.1953)] and that the appellant made a reasonable attempt to safeguard its process.
Id. at 2 [original emphasis].
Notwithstanding the availability of some raw materials, and the lack of proof of improper acquisition of one chemical formula, appellees adequately demonstrated that their complicated production process amounts to a trade secret.
AFFIRMED.
ANSTEAD, C.J., and LETTS, J., concur.